Case 2:18-cr-20454-SJM-RSW    ECF No. 1, PageID.1    Filed 06/26/18    Page 1 of 17



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> D-1   LESLY POMPY, M.D. <br><br> Defendant. <br> _____ / | Case:2:18-cr-20454 <br> Judge: Tarnow, Arthur J. <br> MJ: Whalen, R. Steven <br> Filed: 06-26-2018 At 04:21 PM <br> INDI USA v. POMPY (EK) <br><br> VIO:  21 U.S.C. § 841(a)(1) <br>          18 U.S.C. § 1347 <br>          18 U.S.C. § 2 |

## INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

1.     Beginning in or about January 2012 and continuing through in or about October 2016, in the Eastern District of Michigan, the defendant, Dr. LESLY POMPY created and executed a scheme or pattern of illegal conduct involving the unlawful prescribing and distribution of prescription drug controlled substances and fraudulent health care billings.  Dr. LESLY POMPY and others, both known and unknown to the grand jury, played different roles and engaged in different aspects of the overall scheme.

1

2. During the time period of this Indictment, the Defendant owned and operated a medical practice, Interventional Pain Management Associates, P.C. in Monroe, Michigan. While the Defendant represented himself as a pain management specialist, his actual conduct involved knowingly prescribing massive amounts of prescription opioids, outside the usual course of professional medical practice.

3. The primary prescription drug controlled substances illegally prescribed and distributed were the Schedule II drugs oxycodone (Percocet), hydrocodone (Vicodin, Norco), morphine, methadone, oxymorphone (Opana), fentanyl (Subsys) and tapentadol (Nucynta); the Schedule III drug buprenorphine (Suboxone, Zubsolv), and the Schedule IV drug tramadol. Many of these drugs are commonly abused opioids.

4. The Defendant would prescribe or continue to prescribe addictive controlled substances to patients, (i) despite documentation showing the patients were receiving controlled substance prescriptions from multiple providers at the same time; (ii) despite abnormal urine drug screens (e.g. testing positive of illicit substances or testing negative for the prescribed medication); (iii) in combinations known to have no medical justification or benefit; (iv) without properly titrating to

the prescribed medication; and/or (v) while concurrently prescribing medication to treat addiction.

5. During the time frame of the scheme, the Defendant prescribed more than 4,221,892 dosage units of Schedule II controlled substances and over 6,196,642 total dosage units of all controlled substances. On any given day, the Defendant's office would service at least 60 patients and some days would see as many as 200 to 300 patients. Patients typically received only a cursory examination or no physical examination at all. The Defendant employed nurses and medical assistants to assist in the distribution of the controlled substances.

6. Defendant Dr. LESLY POMPY submitted claims to Medicare, Medicaid and Blue Cross Blue Shield of Michigan ("Blue Cross") seeking reimbursement for the cost of physician services purportedly furnished to patients under his care, including those patients receiving prescription controlled substances.

7. The Defendant would bill Medicare, Medicaid or Blue Cross for "office visits" and other unnecessary medical procedures. Billing for a more expensive procedure than the one actually conducted, is referred to as "upcoding" and it occurred for much of the billing submitted by the Defendant. This included the practice of billing for a more expensive doctor visit which lasted approximately 15-20 minutes, when the defendant, on average, would spend less than two-three

minutes with each patient. In addition to the office visits, the Defendant would bill for referred "pain blocks" (a procedure that requires medication to be injected into the spine of a patient, similar to an epidural), which he himself performed. He also billed for urine drug screens which were conducted in his office.

8. From January 2012 to October 2016, Defendant Dr. LESLY POMPY caused the submission of approximately $16,856,683 in claims to Medicare, Medicaid, and Blue Cross, a majority of which were seeking reimbursement for the costs of office visits and other services that were not medically necessary or the Defendant never rendered.

9. Defendant Dr. LESLY POMPY fraudulently and intentionally billed Medicare, Medicaid, and Blue Cross for: (i) office visits that used billing codes that exceeded the amount of services provided; (ii) office visits that totaled more than 24 hours billed in one single day; and (iii) other procedures that were medically unnecessary.

10. Defendant Dr. LESLY POMPY received approximately $5,224,078 from Medicare, Medicaid and Blue Cross as payment for the claims submitted. Additionally, the Medicare program paid approximately $5,361,451 for prescription medications issued by the Defendant and filled during the timeframe of this scheme.

11. These general allegations are adopted and incorporated in each count of this Indictment.

## COUNTS 1-22
## Distribution of Controlled Substances, Aiding and Abetting,
## (21 U.S.C. § 841(a)(1), 18 U.S.C. § 2)
## D-1 LESLY POMPY, M.D.

12. Beginning in or about January 2012 and continuing through in or about October 2016, in the Eastern District of Michigan, Defendant Dr. LESLY POMPY did knowingly, intentionally and unlawfully distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), including but not limited to the Schedule II drugs oxycodone (Percocet), hydrocodone (Vicodin, Norco), morphine, methadone, oxymorphone (Opana), fentanyl (Subsys) and tapentadol (Nucynta); the Schedule III drug buprenorphine (Suboxone, Zubsolv), and the Schedule IV drug tramadol. These controlled substances were distributed outside the usual course of professional medical practice, including but not limited to the following:

| COUNT | ON OR ABOUT DATE | PATIENT | CONTROLLED SUBSTANCE | DOSAGE UNIT |
|---|---|---|---|---|
| 1 | 5/9/2016 | J.St. | HYDROCODONE BITARTRATE-ACETAMINOPHEN | 21 |
| 2 | 5/17/2016 | J.St. | HYDROCODONE BITARTRATE-ACETAMINOPHEN | 21 |

| 3  | 3/31/2016 | R.B. | FENTANYL (SUBSYS) | 120 |
| 4  | 9/12/2016 | R.B. | MORPHINE SULFATE | 42 |
| 5  | 9/12/2016 | T.L. | OXYCODONE HCL-ACETAMINOPHEN | 14 |
| 6  | 6/2/2016  | D.K. | HYDROCODONE-ACETAMINOPHEN | 90 |
| 7  | 6/2/2016  | D.K. | DEXTROAMP-AMPHETAMINE | 60 |
| 8  | 3/21/2016 | S.S. | OXYCODONE HCL-ACETAMINOPHEN | 63 |
| 9  | 3/21/2016 | S.S. | METHADONE HCL | 21 |
| 10 | 3/21/2016 | S.S. | MORPHINE SULFATE | 42 |
| 11 | 3/21/2016 | S.S. | OXYMORPHONE HCL | 21 |
| 12 | 3/21/2016 | S.S. | TRAMADOL HCL | 120 |
| 13 | 3/28/2016 | F.E. | BUPRENORPHINE/NALOXONE (ZUBSOLV) | 60 |
| 14 | 3/28/2016 | F.E. | OXYCODONE HCL-ACETAMINOPHEN | 120 |
| 15 | 5/16/2016 | R.O. | OXYCODONE-ACETAMINOPHEN | 24 |
| 16 | 5/24/2016 | R.O. | OXYCODONE HCL-ACETAMINOPHEN | 21 |
| 17 | 8/25/2016 | L.K. | TAPENTADOL (NUCYNTA) | 90 |

| 18 | 8/25/2016 | L.K. | METHADONE HCL | 60 |
| 19 | 9/22/2016 | G.T. | MORPHINE SULFATE | 30 |
| 20 | 9/22/2016 | G.T. | METHADONE HCL | 60 |
| 21 | 4/12/2016 | J.Sh. | OXYCODONE HCL-ACETAMINOPHEN | 63 |
| 22 | 4/12/2016 | J.Sh. | METHADONE HCL | 21 |

All in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## COUNTS 23 - 37
### Health Care Fraud, Aiding and Abetting
### (18 U.S.C. § 1347, 18 U.S.C. § 2)
### D-1 LESLY POMPY, M.D.

### The Federal Health Benefit Programs

13. The Medicare program was a federal health care benefit program providing benefits to persons who are over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services.

14. The Michigan Medicaid program ("Medicaid") was a federal and state funded health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. Medicaid covered the costs

7

of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. CMS was responsible for overseeing the Medicaid program in participating states, including Michigan.

15. Blue Cross was a private health insurer that provided health benefits to individuals qualified under their health insurance plans.

16. Medicare, Medicaid, and Blue Cross were "health care benefit programs" as defined by Title 18, United States Code, Section 24(b).

17. The Medicare Program includes coverage under four primary components, hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

18. The physician services at issue in this Indictment were covered by Part B. Part B of the Medicare Program was a medical insurance program that covered, among other things, certain office visits, and other health care benefits, items, and services, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

19. Some of the prescriptions at issue in this Indictment were covered by Part D. Part D of the Medicare program was a subsidized prescription plan for Medicare beneficiaries, often administered by private insurance plans but reimbursed by Medicare through CMS.

20. Participants in Medicare, Medicaid, and Blue Cross Insurance programs agreed to abide by the policies and procedures, rules, and regulations governing reimbursement under these plans. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

21. Participating providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers can only submit claims to Medicare for services they rendered and providers must maintain patient records to verify that the services were provided as described on the claim.

22. Payments under the Medicare, Medicaid, and Blue Cross programs were often made directly to a provider of the goods or services, rather than to the beneficiary. This occurred when the provider submitted the claim to Medicare, Medicaid, or Blue Cross for payment, either directly or through a billing company.

23. All claims submitted to Medicare, Medicaid, or Blue Cross for reimbursement were required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and

identification number of the physician or other health care provider who had ordered the services.

24. The Defendant Dr. LESLY POMPY was a Medicare, Medicaid and Blue Cross provider that purported to provide physician services to patients in an office setting at his medical clinic, Interventional Pain Management, Associates, P.C. in Monroe County, Michigan. The Defendant submitted claims to Medicare, Medicaid and Blue Cross.

25. From in or about January 2012 and continuing through in or about October 2016, in the Eastern District of Michigan, the Defendant, Dr. LESLY POMPY, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid and Blue Cross, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Scheme and Artifice

26. It was the purpose of the scheme and artifice for the Defendant Dr. LESLY POMPY to unlawfully enrich himself through the submission of false and

fraudulent Medicare, Medicaid and Blue Cross claims for services that were not rendered or were not medically necessary.

## Acts in Execution of the Scheme and Artifice

27. In execution of the scheme and artifice, the Defendant Dr. LESLY POMPY submitted or caused the submission of claims to Medicare, Medicaid and Blue Cross for services that were not rendered or medically unnecessary, including, but not limited to, the following:

| COUNT | PURPORTED DATE OF SERVICE | PATIENT | FEDERAL HEALTH PLAN | AMOUNT BILLED | DESCRIPTION OF PURPORTED SERVICE |
|---|---|---|---|---|---|
| 23 | 5/9/2016 | J.St. | BCBS | $90.00 | 99213 - Office or other outpatient visit for evaluation and management of an established patient |
| 24 | 5/9/2016 | J.St. | BCBS | $236.75 | G0483 – Drug test(s), definitive |
| 25 | 5/17/2016 | J.St. | BCBS | $90.00 | 99213 - Office or other outpatient visit for evaluation and management of an established patient |
| 26 | 3/31/2016 | R.B. | BCBS | $195.00 | 99215 - Office or other outpatient visit for evaluation and management of an established patient |
| 27 | 6/2/2016 | D.K. | BCBS | $90.00 | 99213 - Office or other outpatient visit for evaluation and management of an established patient |

| | | | | | |
|---|---|---|---|---|---|
| 28 | 9/12/2016 | T.L. | BCBS | $90.00 | 99213 - Office or other outpatient visit for evaluation and management of an established patient |
| 29 | 3/21/2016 | S.S. | Medicare | $90.00 | 99213 - Established patient office or other outpatient visit, typically 15 minutes |
| 30 | 5/26/2016 | A.M. | Medicare | $236.75 | G0483 – Drug test(s), definitive |
| 31 | 5/26/2016 | A.M. | Medicare | $90.00 | 99213 - Established patient office or other outpatient visit, typically 15 minutes |
| 32 | 5/26/2016 | K.R. | Medicaid | $195.00 | 99215 - Office or other outpatient visit for evaluation and management of an established patient |
| 33 | 5/26/2016 | M.B. | Medicare | $90.00 | 99213 - Established patient office or other outpatient visit, typically 15 minutes |
| 34 | 5/26/2016 | K.W. | Medicare | $90.00 | 99213 - Established patient office or other outpatient visit, typically 15 minutes |
| 35 | 9/12/2016 | K.R. | Medicaid | $195.00 | 99215 - Office or other outpatient visit for evaluation and management of an established patient |
| 36 | 9/12/2016 | B.L. | Medicare | $90.00 | 99213 - Established patient office or other outpatient visit, typically 15 minutes |
| 37 | 1/18/2016 | K.R. | Medicaid | $195.00 | 99215 - Office or other outpatient visit for evaluation and management of an established patient |

All in violation of Title 18, United States Code, Section 1347 and Title 18,

United States Code, Section 2.

## CRIMINAL FORFEITURE
## (21 U.S.C. § 853; 18 U.S.C. § 981(a)(1)(C)
## and 28 U.S.C. § 2461; 18 U.S.C. §§982(a)(7))

28. The allegations contained in Counts 1-37 of this Indictment are hereby incorporated by reference for the purpose of alleging forfeiture against the defendant pursuant to the provisions of Title 21, United States Code, Section 853; Title 18, United States Code, Sections 981(a)(1)(C) and 982; and Title 28, United States Code, Section 2461.

29. As a result of the foregoing violations of Title 21, United States Code, Section 841(a)(1), as charged in Counts 1-22 of this Indictment, defendant shall forfeit to the United States (a) any property constituting, or derived from, any proceeds Defendant obtained, directly or indirectly, as the result of the violations, and (b) any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations, pursuant to Title 21, United States Code, Section 853(a).

30. As a result of the foregoing violations of Title 18, United States Code, Section 1347, as charged in Counts 23-37 of this Indictment, defendant shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violations, pursuant to Title 18,

United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, and (b) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

31. Such property includes, but is not limited to, the following assets:

   a. All Funds on Deposit and All Other Items of Value Up to $3.6 Million in Monroe Bank and Trust, Account No. ▬147 (Approximately $55,937.45 value, as of March 16, 2018);

   b. All Funds on Deposit and All Other Items of Value Up to $3.6 Million in Monroe Bank and Trust, Account No. ▬049 (Approximately $221,400.41 value, as of March 16, 2018);

   c. All Funds on Deposit and All Other Items of Value in Monroe Bank and Trust, Account No. 206042147 (Approximately $85,667.53 value, as of March 16, 2018);

   d. All Funds on Deposit and All Other Items of Value in Merrill Lynch, Pierce, Fenner & Smith, Account No. ▬235 (Approximately $289,941.66 value, as of March 16, 2018);

   e. All Funds on Deposit and All Other Items of Value in Merrill Lynch, Pierce, Fenner & Smith, Account No. ▬234 (Approximately $62,335.85 value, as of );

   f. All Funds on Deposit and All Other Items of Value in E Trade Securities, LLC, Account No. ▬412 (Approximately $755,826.12 value, as of March 16, 2018);

   g. All Funds on Deposit and All Other Items of Value in E Trade Securities, LLC, Account No. ▬195 (Approximately $92,965.74 value, as of March 16, 2018).

32.  Such property also includes a money judgment, and all traceable interest and proceeds for which the defendants are jointly and severally liable. Such sum in aggregate is property representing the proceeds of the aforementioned offenses, or is traceable to such property, and/or is involved in violations of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 1347.

33.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendants shall forfeit substitute property (i.e. any other property of Defendant), up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

THIS IS A TRUE BILL

s/GRAND JURY FOREPERSON

MATTHEW SCHNEIDER
United States Attorney

s/WAYNE F. PRATT
CHIEF, Health Care Fraud Unit
Assistant United States Attorney

s/BRANDY R. McMILLION
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: (313) 226-9622
Email: brandy.mcmillion@usdoj.gov

Dated: June 26, 2018

ORIGINAL

| United States District Court<br>Eastern District of Michigan | Criminal Case C | Case:2:18-cr-20454<br>Judge: Tarnow, Arthur J.<br>MJ: Whalen, R. Steven<br>Filed: 06-26-2018 At 04:21 PM<br>INDI USA v. POMPY (EK) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** |
| ☐ Yes  ☒ No | AUSA's Initials: _BRM_ |

**Case Title:** USA v. LESLY POMPY

**County where offense occurred :** MONROE

**Check One:**  ☒ Felony  ☐ Misdemeanor  ☐ Petty

   ✓ Indictment/____Information --- **no** prior complaint.
   ____Indictment/____Information --- based upon prior complaint [Case number:                    ]
   ____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____  **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

June 26, 2018
      Date

_Brandy R. McMillion_ (signature)
BRANDY R. MCMILLION
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226-9622
Fax:     (313) 226-2621
E-Mail address: brandy.mcmillion@usdoj.gov
Attorney Bar #: P69838

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.