UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>LESLY POMPY, M.D.,<br><br>     Defendant. | Criminal No. 18-20454<br><br>HON. ARTHUR J. TARNOW<br><br>**MOTION IN LIMINE<br>TO SUPPRESS<br>MEDICAL RECORDS** |

Under Criminal Rule 12(b)(3)(C), Defendant Lesly Pompy, M.D., requests an order suppressing:

1.     All medical records seized by law enforcement from iPatientCare, and

2.     Alternatively, all information about patients receiving diagnoses, treatment, or referrals for treatment for substance use disorders because such records were obtained in violation of 42 C.F.R. Part 2.

Dr. Pompy certifies that his attorneys complied Local Criminal Rule 12.1 before filing this Motion. The Government declined to concur in the relief requested.

Respectfully submitted,

BUTZEL LONG, P.C.

Dated:  March 13, 2020

JOSEPH E. RICHOTTE   P70902

GEORGE B. DONNINI (P66793)
JOSEPH E. RICHOTTE (P70902)
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 258-1616
donnini@butzel.com
richotte@butzel.com
*Counsel for Dr. Lesly Pompy*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

LESLY POMPY, M.D.,

       Defendant.

Criminal No. 18-20454

HON. ARTHUR J. TARNOW

**MOTION IN LIMINE
TO SUPPRESS
MEDICAL RECORDS**

**DEFENDANT'S
MEMORANDUM IN SUPPORT**

BUTZEL LONG, P.C.

GEORGE B. DONNINI (P66793)
JOSEPH E. RICHOTTE (P70902)
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 258-1616
donnini@butzel.com
richotte@butzel.com
*Counsel for Dr. Lesly Pompy*

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................ II

QUESTIONS PRESENTED .......................................................... IV

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................. V

INTRODUCTION ...................................................................... 1

ARGUMENT ............................................................................ 1

    I.    *Standing:* Dr. Pompy has standing to contest the seizure of medical records ................................................................. 1

    II.    *Medical Records:* The Court suppress the unlawful seizure of medical records without a valid warrant ............................. 3

    III.    *Addiction Records:* Alternatively, the Court should suppress all records regarding patients' diagnosis, treatment, and referral for treatment of substance-use disorders ......................... 4

CONCLUSION ......................................................................... 7

# INDEX OF AUTHORITIES

**Cases**

*Birchfield* v. *North Dakota*,
—U.S.—; 136 S.Ct. 2160 (2016)....................................................IV, 3

*Florida* v. *Jardines*,
569 U.S. 1 (2013) ......................................................................... 2

*Hudson* v. *Michigan*,
547 U.S. 586 (2006) ..................................................................... 4

*Katz* v. *United States*,
389 U.S. 347 (1967)...................................................................... 2

*Mancusi* v. *DeForte*,
392 U.S. 364 (1968) ..................................................................... 2

*McGarry* v. *J.A. Mercier Co.*,
272 Mich. 501 (1935) ................................................................... 2

*People* v. *Fiorillo*,
195 Mich. App. 701 (1992) ............................................................ 3

*Taylor* v. *City of Saginaw*,
922 F.3d 328 (CA6 2019) .............................................................. 4

*United States* v. *Calandra*,
414 U.S. 338 (1974) ..................................................................... 4

*United States* v. *Gardner*,
No. 16-20135, 2016 WL 5110190 (ED Mich. Sept. 21, 2016)...................... 2

*United States* v. *Kennedy*,
61 F.3d 494 (CA6 1995) ..........................................................IV, 4

*United States* v. *Master*,
614 F.3d 236 (CA6 2010) .............................................................. 4

*United States* v. *Smith*,
263 F.3d 571 (CA6 2001)............................................................... 2

*Wong Sun* v. *United States*,
371 U.S. 471 (1963) ..................................................................... 4

**Statutes**

42 U.S.C. § 290dd-2 .................................................................. 5

M.C.L. § 600.761 ...................................................................... 3

M.C.L. § 600.8317 .................................................................... 3

**Regulations**

42 C.F.R. § 2.2 .......................................................................... 5

42 C.F.R. § 2.11 ........................................................................ 5

42 C.F.R. § 2.12 ........................................................................ 6

42 C.F.R. § 2.12(b)(2) ................................................................ 5

42 C.F.R. § 2.12(b)(3) ................................................................ 5

42 C.F.R. § 2.13(a) ................................................................. 5, 6

42 C.F.R. § 2.13(b) .................................................................... 5

42 C.F.R. § 2.64(d)(2) ................................................................ 5

42 C.F.R. § 2.66(a) .................................................................... 5

42 C.F.R. § 2.67(a) .................................................................... 6

42 C.F.R. § 2.67(c) .................................................................... 6

45 C.F.R. Part 164, Subpart E ..................................................... 2

**Other Authorities**

1 OAG No. 5125 (Mich. 1978) ...................................................... 2

## QUESTIONS PRESENTED

No. 1:    Should the Court suppress the medical records that law enforcement seized from iPatientCare?

No. 2:    If not, should the Court at least suppress information concerning substance-use disorders under 41 C.F.R. Part 2?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

42 C.F.R. Part 2.

*Birchfield* v. *North Dakota*, —U.S.—; 136 S.Ct. 2160 (2016).

*McGarry* v. *J.A. Mercier Co.*, 272 Mich. 501 (1935)

*United States* v. *Gardner*, 2016 WL 5110190 (ED Mich. Sept. 21, 2016)

*United States* v. *Kennedy*, 61 F.3d 494 (CA6 1995)

*United States* v. *Master*, 614 F.3d 236 (CA6 2010)

*United States* v. *Smith*, 263 F.3d 571 (CA6 2001)

*Wong Sun* v. *United States*, 371 U.S. 471 (1963)

Defendant Lesly Pompy, M.D., respectfully submits this Memorandum in support of his motion in limine to suppress information about patients receiving diagnoses, treatment, or referrals for treatment for substance use disorders obtained in violation of 42 C.F.R. Part 2.

## INTRODUCTION

This is a criminal case. Dr. Pompy is charged with unlawfully prescribing controlled substances to patients outside the usual course of professional practice and without a legitimate medical basis, and with unlawfully billing for services that were unnecessary—charges he denies. During the course of its investigation, the Monroe Area Narcotics Investigative Services ("**MANTIS**") team, a multi-jurisdictional task force that includes federal, state, and local law enforcement, executed a search warrant at Dr. Pompy's office. The warrant authorized the search and seizure of patient records. When MANTIS learned that the supermajority of patient records were in electronic form and housed on a remote server with iPatientCare, a cloud-based electronic medical records ("**EMR**") management company, a MANTIS officer contacted iPatientCare and ordered it to produce the EMRs under the authority of the warrant for Dr. Pompy's office. MANTIS did not obtain a new warrant for iPatientCare. This warrantless search and seizure of the EMRs was unreasonable, and the records suppressed.

## ARGUMENT

**I.    *Standing:* Dr. Pompy has standing to contest the seizure of medical records.**

The Fourth Amendment guarantees the right of "the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Although it is often said that the Fourth Amendment "protects people, not places,"

*Katz* v. *United States*, 389 U.S. 347, 351 (1967), it affords people greater protections in certain constitutionally protected areas. *Florida* v. *Jardines*, 569 U.S. 1, 5 (2013). The term *houses* is not to be taken literally; it extends to commercial premises. *Mancusi* v. *DeForte*, 392 U.S. 364, 367 (1968). A person has standing to object to a search of his office, as well as his home. *Ibid.*

For records stored offsite, Dr. Pompy must have had a subjective and objectively reasonable expectation of privacy. *United States* v. *Smith*, 263 F.3d 571, 581–582 (CA6 2001).

Dr. Pompy had a subjective expectation of privacy in the medical records of his practice. The warrant specifically identified the records to be seized as "business records of the medical practice of Lesly Pompy." Exhibit 1, Office Warrant ¶ 2A. Under Michigan law, a physician owns patient records incident to treatment. *McGarry* v. *J.A. Mercier Co.*, 272 Mich. 501, 503–504 (1935); 1 OAG No. 5125 (Mich. 1978) (same). Electronic medical records housed on iPatientCare's servers are encrypted to comply with the HIPAA Privacy Rule. Only Dr. Pompy and his staff could access iPatientCare records with a password decryption key. Exhibit 2, Pompy Decl. ¶¶ 3–4 (Mar. 13, 2020). Using password protections establishes a subjective expectation of privacy. *United States* v. *Gardner*, No. 16-20135, 2016 WL 5110190, at *4 (ED Mich. Sept. 21, 2016) (collecting cases).

Dr. Pompy's expectation of privacy in patient medical records is objective reasonable. Society affords medical records substantial privacy protections; they generally cannot be released to third parties without a patient's consent. See, *e.g.*, 45 C.F.R. Part 164, Subpart E.

II.  *Medical Records:* **The Court suppress the unlawful seizure of medical records without a valid warrant.**

Warrantless searches and seizures are generally unreasonable unless an exception to the warrant requirement applies.  *Birchfield* v. *North Dakota*, —U.S.—; 136 S.Ct. 2160, 2173 (2016).  Here, the seizure and search of iPatientCare records occurred without a warrant, making it presumptively unreasonable.

MANTIS obtained a search warrant for the main office of Interventional Pain Management Associates, P.C. ("**IPMA**"), located at 730 North Macomb Street, Suite 22, Monroe, Michigan 48162.  Among other things, the warrant authorized the seizure of patient medical and billing records from that location.  Exhibit 1, Office Warrant ¶ 2A.  Although there were some paper and electronic records onsite, the supermajority of these records were located offsite on a remote server maintained by iPatientCare, a company based in New Jersey.  Exhibit 3, iPatientCare Warrant.  One or more MANTIS agents contacted iPatientCare and demanded the production of these records—located beyond the four walls of 730 North Macomb Street, Suite 22—under the authority of the IPMA search warrant.  This exceeded the authority granted under the warrant and violated the Fourth Amendment.

Nearly a year later, recognizing its error, law enforcement obtained a second warrant from a Michigan magistrate for iPatientCare.  *Ibid.*  But this warrant was invalid because Michigan magistrates lack the power to issue a warrant for records located outside the state.  They have the power to issue warrants capable of being executed anywhere within the state, M.C.L. § 600.8317; *People* v. *Fiorillo*, 195 Mich. App. 701 (1992), and their jurisdiction extends to documents located within the state, M.C.L. § 600.761.  But there is no statutory or common-law authority authorizing extraterritorial warrants.  When a warrant is signed by a state judicial officer who lacks the legal

– 3 –

authority necessary to issue one, the warrant is void *ab initio*. *United States* v. *Master*, 614 F.3d 236, 238–251 (CA6 2010). Such warrants violate the Fourth Amendment. *Id.*

Dr. Pompy requests that the unlawfully seized and searched iPatientCare records be suppressed at trial. The penalty for violating the Fourth Amendment must bear some relationship between the violation and the purposes that the law serves. *Hudson* v. *Michigan*, 547 U.S. 586, 593 (2006). The rule of suppression is calculated to prevent, not to repair—to deter by removing the incentive to disregard it. *United States* v. *Calandra*, 414 U.S. 338, 347 (1974). The main reason for suppressing the fruit of unlawful warrantless searches is to deter more unlawful warrantless searches in the future: "The basic purpose of [the Fourth] Amendment, as recognized in countless decisions of [the Supreme] Court is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Taylor* v. *City of Saginaw*, 922 F.3d 328, 332 (CA6 2019). Suppressing the fruit of warrantless searches and seizures promote respect for the warrant requirement and the interests served by it. Thus, where officers violate the warrant requirement, courts regularly suppress unlawfully searched and seized items as the appropriate remedy. See *United States* v. *Kennedy*, 61 F.3d 494, 497 (CA6 1995) (citing *Wong Sun* v. *United States*, 371 U.S. 471, 484–485 (1963)). Suppression in this case would deter future warrantless searches of business records—especially highly confidential medical records.

III. *Addiction Records:* **Alternatively, the Court should suppress all records regarding patients' diagnosis, treatment, and referral for treatment of substance-use disorders.**

A triple-board certified physician in anesthesiology, pain management, and addiction medicine, Dr. Pompy operated IPMA as a private pain-management practice,

– 4 –

through which he also provided addiction treatment.  He diagnosed some of his patients with substance-use disorders and either treated them for addiction or referred them for such treatment elsewhere. Patient records regarding substance-use disorder diagnosis, treatment, or referrals are inadmissible in any criminal case except as permitted under 42 C.F.R. Part 2.  This regulation implements legislative policy to protect and protect trust within the physician-patient relationship between those who suffer from substance-use disorders and those providing treatment.  42 U.S.C. § 290dd-2.  See also 42 C.F.R. § 2.64(d)(2). Law enforcement seized such records without obtaining prior approval from a federal court, as required under 42 C.F.R. Part 2.  The Court should therefore rule that such records, and testimony about such records, are inadmissible at trial.

Federal regulations restrict the disclosure and use of substance-use disorder patient records that are maintained in connection with a "Part 2 program."  42 C.F.R. § 2.2.  A Part 2 program is any federally assisted program, which includes programs carried out under authorization from a federal agency.  42 C.F.R. §§ 2.11; 2.12(b)(2). An authorized maintenance treatment or withdrawal management program qualifies as Part 2 program.  42 C.F.R. § 2.12(b) (2)(ii), (b)(3).  Dr. Pompy submits that his practice qualified as a Part 2 program because he obtained a waiver to treat opioid dependent patients under the Drug Addiction Treatment Act.

Patient records subject to these regulations cannot be disclosed or used except as permitted in the regulations.  42 C.F.R. § 2.13(a).  They cannot otherwise be used in any criminal proceeding.  *Ibid.*  The restrictions on disclosure and use apply to law enforcement agencies and government officials.  42 C.F.R. § 2.13(b).

The regulations allow law enforcement to request an order from a federal court authorizing the disclosure or use of covered patient records to investigate or prosecute a Program 2 service or one of its employees or agents.  42 C.F.R. § 2.66(a).  To Dr.

– 5 –

Pompy's knowledge, no such request was made here.

Law enforcement requested assistance with its investigation from Blue Cross Blue Shield of Michigan. Exhibit 4, Blair Aff. at 8, ¶ 4(B) (Sept. 22, 2016). In response to that request, BCBSM investigator James Howell presented himself as a pain patient to IPMA as part of an undercover investigation. See *id.*, at 8–19, ¶ 4A–4I. Based on Howell's undercover efforts, law enforcement obtained warrants and seized covered records.

Howell was acting either as a *de facto* undercover law enforcement agent or as an informant under 42 C.F.R. § 2.12.[1] Either way, such undercover operations against Part 2 programs are illegal unless a court authorizes the placement of the agent or informant in the program. 42 C.F.R. § 2.67(a). The court cannot authorize such placement unless it determines that good cause exists to believe that: (1) an employee of the Part 2 program is engaged in criminal activity; (2) ***other ways of obtaining evidence of the suspected criminal activity are not available or would not be effective***; and (3) ***the public interest and need for the placement outweighs the potential injury to patients, the physician-patient relationship, and the treatment services***. 42 C.F.R. § 2.67(c). To Dr. Pompy's knowledge, law enforcement did not seek or obtain such an order before commencing undercover operations at IPMA. Because law enforcement did not comply with the Part 2 regulations, any information about a patient's substance-use disorder cannot be disclosed or used in this criminal proceeding. 42 C.F.R. § 2.13(a).

---

[1]    An *undercover agent* is any federal, state, or local law enforcement official who enrolls in or becomes an employee of a Part 2 program for the purpose of investigating a suspected violation of law. 42 C.F.R. § 2.12. An *informant* is a person who, at law enforcement's request, either: (1) becomes a patient of a Part 2 program; or (2) observes patients or employees of a Part 2 program for the purpose of reporting the information obtained to law enforcement. *Ibid.*

## CONCLUSION

For these reasons, the Court should suppress the unlawfully seized medical records.  Alternatively, it should suppress all records of patients' substance-use disorders under 42 C.F.R. Part 2.

Respectfully submitted,

BUTZEL LONG, P.C.

Dated:  March 13, 2020

JOSEPH E. RICHOTTE   P70902

GEORGE B. DONNINI (P66793)
JOSEPH E. RICHOTTE (P70902)
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 258-1616
donnini@butzel.com
richotte@butzel.com
*Counsel for Dr. Lesly Pompy*

PROOF  Served via ECF.
No non-ECF participants.

– 7 –