UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

v.

LESLY POMPY,

            Defendant.

Case No. 2:18-cr-20454-1

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE [64]**

Defendant Lesly Pompy owned and operated a medical practice in Monroe, Michigan called Interventional Pain Management Associates, P.C. (IPMA). ECF 41, PgID 412–13. The Government alleged that Defendant had, from 2012 to 2016, unlawfully prescribed Schedule II and Schedule III drugs to patients and then submitted reimbursement claims to Medicare, Medicaid, and Blue Cross Blue Shield of Michigan (Blue Cross) for the cost of services. *Id.* at 413–14. The Government charged Defendant with twenty-two counts of distribution of controlled substance, aiding and abetting in violation of 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2, fifteen counts of health care fraud, aiding and abetting in violation of 18 U.S.C. §§ 2, 1347, and two counts of maintaining drug-involved premises, aiding and abetting in violation of 21 U.S.C. § 856(a)(1); 18 U.S.C. § 2. *Id.* at 416–26.

1

Defendant filed an omnibus motion that contained twelve separate motions in limine. ECF 64. For the following reasons, the Court will grant in part and deny in part Defendant's omnibus motion in limine.[1]

## LEGAL STANDARD

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *United States v. Collins*, 799 F.3d 554, 577–78 (6th Cir. 2015) (quoting Fed. R. Evid. 401). Relevant evidence is generally admissible absent an exception under Federal Rule of Evidence 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. And Rule 404(b) prohibits the use of "any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence may be used to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" so long as, in a criminal case, the prosecution provides reasonable notice of intent to offer the evidence at trial. Fed. R. Evid. 404(b)(2).

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* E.D. Mich. L. Crim. R. 12.1; E.D. Mich. L.R. 7.1(f)(2).

## DISCUSSION

Defendant's omnibus motion contained twelve requests in limine. ECF 64. The Court will address ten of the twelve motions below.

I. <u>Motion 1</u>

Defendant first claimed that the Government should be precluded from offering evidence about patients seen by IPMA other than the patients identified in the first twenty-two counts of the indictment. *Id.* at 661. To Defendant, "evidence about different prescriptions written to different patients cannot make it more probable that [Defendant] issued the Indictment prescriptions outside the course of legitimate medical practice." *Id.* at 662. In response, the Government asserted that "[e]vidence about the overall medical practice and patients not specifically listed is admissible because it is within the broad criminal scheme charged by the grand jury." ECF 69, PgID 995. The evidence would be relevant because it would go to whether Defendant "knowingly or intentionally prescribed without authority." *Id.* at 997. Plus, the Government maintained, the evidence would help the jury to see the full breadth of Defendant's operations. *Id.* at 1001.

But the motion turns on the relevancy of various pieces of evidence, and making a determination of relevance on any one of them will vary depending on the medical record and on the patient. Thus, the motion is premature and relevance objections would be more appropriately lodged at trial on fact-specific bases. The Court will therefore deny the motion without prejudice. Defendant and the Government may lodge fact-specific arguments for and against the admission of

prescriptions to non-indictment patients at trial, and the Court will address them from the bench.

II.  Motion 2

Next, Defendant argued that the Government should be precluded from offering evidence about IPMA's bills for any healthcare services other than the bills listed in counts twenty-three through twenty-seven. ECF 64, PgID 673. "How [Defendant] billed for unindicted services is not directly relevant to whether he correctly billed for the [fifteen] services that are charged in the Indictment." *Id.* at 674. Allowing the bills to come into evidence, argued Defendant, would make the trial "about every IPMA bill, not simply those charged in the Indictment." *Id.*

Because the Government must prove that Defendant engaged in a "scheme or artifice to defraud" to prove the health care fraud charge of the indictment, 18 U.S.C. § 1347, the bills would certainly seem relevant to the health care fraud scheme charged. And Defendant admitted that the bills could be introduced to show absence of mistake. ECF 64, PgID 674.

The motion is premature for resolution here for two reasons. One, resolving the issue will be necessarily fact intensive because the relevance of each unindicted service may vary. Second, depending on factual circumstances, the Court may need to weigh the risk of the jury confusing bills for services listed and the bills not listed in the indictment—and to make clarifying instructions as appropriate. The Court will thus deny the motion without prejudice. As with Motion 1, Defendant may raise arguments at trial and the Court will resolve them from the bench.

4

III. <u>Motion 4</u>

Defendant argued that the Government should be precluded from arguing or suggesting that the prescription of off-label controlled substances is unlawful or that it constitutes evidence of unlawful behavior. *Id.* at 676. Off-label prescribing is the process of prescribing a drug for a disease or symptom for which the drug has not received FDA approval. *Id.* at 676–77. It is undisputed that Defendant prescribed Subsys, a medication approved for pain management in cancer patients, to a patient who was not diagnosed with cancer. *Id.*

The Court will deny Defendant's motion because the approved uses of the drugs at issue in the trial are relevant to at least the first charge in the indictment—unlawfully distributing controlled substances. And while Defendant also claimed that the Government should not be allowed to argue that an off-label prescription is prima facie evidence of an intent to violate 21 U.S.C. § 841(a) because the argument could mislead the jury, *id.* at 678, the Government does not intend to offer evidence of the off-label prescriptions as prima facie evidence of intent to violate 21 U.S.C. § 841(a). ECF 69, PgID 1016. Rather, the Government intends to offer the evidence to "show that [Defendant's] off-label prescribing to specific patients in particular circumstances is evidence that he knowingly issued unauthorized prescriptions for Subsys and other medications." *Id.* Under Rule 403, that evidence would be highly probative and relevant to the distribution of controlled substances charge because the evidence addresses Defendant's prescribing activities. And prejudice that might result from admitting evidence of off-label prescriptions would not substantially

5

outweigh the probative value. *See* Fed. R. Evid. 403. Defendant conceded that the evidence is relevant, and he properly acknowledged that off-label prescriptions are unlawful. *See* ECF 64, PgID 677–678. For all the foregoing reasons, the Court will deny the motion.

IV. Motion 6

Defendant argued that the Government should be precluded from offering evidence that Defendant treated more than 100 patients for maintenance and detoxification from opioid addiction. ECF 64, PgID 682. For the following reasons, the Court will deny the motion as to the evidence of treating more than 100 patients for opioid addiction.

Defendant's argument is premised on the Drug Addiction Treatment Act of 2000, 21 U.S.C. § 823(g). Under the act, physicians must receive authorization from the Secretary of Health and Human Services to treat for opioid addiction more than the statutory maximum number of patients at a time. *Id.* at (1)(A)–(C). The baseline number of patients is thirty. *Id.* at (2)(B)(iii)(I). If a physician submits written notice to the Secretary of Health and Human Services within a year of receiving his or her initial authorization to treat patients for opioid addiction, he or she can be approved to treat up to 100 patients at a time. *Id.* at (2)(B)(iii)(II). A physician approved to treat 100 patients can obtain licensing to treat up to 275 patients at a time for opioid addiction if he or she (a) has been approved to treat 100 patients for at least one year, (b) holds credentialling or provides medication-assisted treatment in a qualified practice setting, (c) has not had his or her Medicare enrollment and billing privileges

6

revoked, and (d) has not violated the Controlled Substances Act, 21 U.S.C. § 801 *et. seq*. *See id.* at (2)(B)(iii)(II)(dd); 42 C.F.R. § 8.610.[2]

Defendant argued that he was licensed to treat up to 275 opioid addiction patients when the police executed a search warrant in the case. ECF 64, PgID 683. He claimed that he had "submitted the required notice to increase his limit to 275" and had been informed six days before the search that he had "met the requirements" to treat 275 patients. *Id.* Defendant argued that the Government should therefore be precluded from offering evidence that Defendant was treating more than 100 opioid addiction patients at the time of the search. *Id.* at 683–84. But in truth, Defendant was not licensed to treat 275 patients on the day of the search. His medical license was not updated to allow for the treatment of 275 patients until three days after the search. ECF 69-4, PgID 1041; *see* ECF 69, PgID 1021. And four days after the search, his license was then reduced again to allow for the treatment of only 100 patients. ECF 69-4, PgID 1041; *see* ECF 69, PgID 1021.

Defendant seemed to suggest that he was not over his 100-patient limit at the time of the search warrant execution because of the license-updating timeline. A closer look at the dates and record evidence supporting the timeline, however, reveals that Defendant was in fact treating more than 100 patients for opioid addiction at the time of the search. And that evidence would therefore be highly relevant and probative of the unlawful distribution of controlled substances because it would tend

---

[2] The process of requesting an increase to a patient limit of 275 requires the physician to fill out multiple forms and submit a letter containing a wide range of information about his or her treatment abilities and plans. 42 C.F.R. § 8.620.

7

to show that Defendant was distributing substances to more patients than his limited treatment license could possibly support. Likewise, and for the same reason, the evidence would be relevant to whether Defendant violated federal drug treatment law as part of his medical practice and whether he was maintaining a drug-involved premise. Any prejudice resulting from the evidence would not substantially outweigh its probative value, which has great relevance to at least two of the three charges in the indictment. In sum, the Court will deny the motion as to the evidence of treating more than 100 patients for opioid addiction.

Defendant argued, in the alternative, that the Court should reject the Government's attempt to use a specific prescription of Zubsolv to patient FE in Count 13 of the indictment to prove that Defendant exceeded his 100-patient limit. ECF 64, PgID 683–84. Because the determination about the prescription of Zubsolv to patient FE will require a fact-specific inquiry involving a particular prescription to a particular patient, the Court finds that the analysis would be more appropriately conducted at trial. The Court will therefore deny Defendant's motion as to patient FE without prejudice. The Government may make an argument about the prescription of Zubsolv to patient FE again during trial, and the Court will address it from the bench.

V. <u>Motion 7</u>

In his seventh motion in limine, Defendant argued that the Government should be precluded from offering evidence of any alleged violations of law or regulation governing the transportation and storage of controlled substances. *Id.* at

685. Controlled substances cannot be transferred between facilities without a DEA distributor's license. 21 U.S.C. § 822. They must be stored at a registered location, and each location must be registered. 21 C.F.R. § 1301.12(a).

Defendant admitted there was evidence that he transported controlled substances from his office to his surgical center without a distributor's license. ECF 64, PgID 685. He also admitted there was evidence that he transported to his home—which was not a registered location—samples of medications from manufacturers and prescriptions that patients had returned to him. *Id.* Yet he claimed that the evidence of that improper transportation and storage was irrelevant to "whether [he had] properly prescribed the medications at issue." *Id.* Defendant's framing of the evidence's relevancy, however, is too narrow. The evidence about his transportation and storage of controlled substances is relevant to all the charged violations in the indictment: unlawfully distributing controlled substances, engaging in health care fraud, and maintaining two drug-involved premises. ECF 41, PgID 416–26. Defendant claimed the evidence would be prejudicial because it could only be offered for its "propensity value: this behavior is unusual, it therefore shows a penchant for acting unusually, and it means [Defendant] must have prescribed the charged medications outside the usual course of professional practice." ECF 64, PgID 685. But the Government stated that it would offer the evidence for the purpose of showing a fraudulent scheme by Defendant, which bears directly on the health care fraud charge in the indictment. ECF 69, PgID 1023. And even if the evidence is prejudicial,

9

its prejudice would not substantially outweigh the probative value of the evidence as to all three charges in the indictment.

Defendant argued, in the alternative, that the Court should preclude the Government from offering evidence about the drugs Defendant stored at his home. ECF 64, PgID 686. Noting that the indictment lists only IPMA's office and surgical center, Defendant argued that the "seizure of controlled substances from [Defendant's] house is not relevant." *Id.* Defendant also claimed that the evidence would be prejudicial because "[i]t would encourage the jury to convict [him] because of apparent regulatory violations that have nothing to do with whether a challenged prescription was written to a patient within the usual course of professional practice." *Id.* at 686. Although Defendant is correct that the indictment does not name Defendant's home as a location for drug storage, evidence of drugs that Defendant in fact stored in his home would nonetheless be admissible under Rule 403. The evidence would be probative in relation to the maintaining drug-involved premises and health care fraud charges on trial: after all, the drugs found in Defendant's home would be closely related to his alleged transportation and storage activities. Any prejudice thus does not substantially outweigh the probative value of the evidence. For the above reasons, the Court will deny Defendant's seventh motion.

VI. <u>Motion 8</u>

Defendant argued that the Court should preclude the Government from offering evidence that he received honoraria from Insys, the company that manufactured a controlled substance called Subsys, a spray form of fentanyl for

10

cancer patients. ECF 64, PgID 687. Defendant performed multiple lectures and trainings about the use of Subsys throughout his career. *Id.* The evidence should be excluded under Rule 403, Defendant argued, because it would mislead the jury to think that he was bribed to write unnecessary prescriptions of Subsys. *Id.* at 688. Defendant did agree that the evidence of honoraria would be relevant and could be offered to prove motive, a proper purpose under Federal Rule of Evidence 404(b)(1). *Id.* at 687.

The Court will deny Defendant's motion because the evidence could be properly used to show both knowledge of Subsys's authorized use and to show potential motive. *See* Fed. R. Evid. 404(b)(2). Indeed, the Government submitted that it intended to use the evidence for those purposes. ECF 69, PgID 1024. ("[I]n addition to showing a potential motive, the [G]overnment intends to show that [Defendant] prescribed Subsys (and other drugs) in an unauthorized way, outside the course of professional practice or for no legitimate medical purpose—and the payments to [Defendant] for conducting Subsys trainings show that he knew it."). And there is no question that the Government could use the evidence to show motive, which would be a legitimate purpose under Rule 404(b). *See* ECF 64, PgID 687.

A Rule 403 balancing analysis also tips in favor of denying the motion. Evidence that Defendant received honoraria from Insys would be admissible under Rule 403 because of its bearing on Defendant's motive and its potential connection to Defendant's prescribing activities. The evidence would also be probative of the distribution of controlled substances charge in the indictment. Defendant's argument

11

that the evidence would be prejudicial because it would mislead the jury or confuse the issues is unavailing. The Court is not convinced that evidence that Defendant received honoraria from Insys would confuse the jury. Any prejudice resulting from the evidence would not substantially outweigh its probative value considering Defendant's admission that the evidence could be used to show motive.

In sum, because the evidence that Defendant received honoraria from Insys would be relevant and offered for a legitimate purpose, the Court will deny Defendant's motion. The Government may introduce the evidence for the above admissible purposes only. The Court will issue a clarifying instruction if it deems one necessary.

VII. Motion 9

Defendant argued that the Government should be precluded from offering evidence about the "street value" of prescriptions he wrote to patients. ECF 64, PgID 688. The Court will deny the motion because evidence of the street value of the prescriptions Defendant wrote to patients is probative and not unfairly prejudicial. Evidence of the value of the drugs is probative to the first charge in the indictment, unlawfully distributing controlled substances, because it supports a showing of why Defendant wrote the prescriptions. And the evidence would bear on whether and to what extent it was easier for patients to obtain drugs from Defendant than on the street. The probative value would not be substantially outweighed by any prejudice that would accompany the evidence. Indeed, Defendant pointed to no specific prejudice that would result from admitting the evidence of the drugs' street value

12

other than the possibility that it would "inflame the passions of the jury." *Id.* at 689. But a concern about routine and understandable inflammation of the jurors' feelings does not overcome the significant probative value of the evidence to be offered.

Defendant contended that although the street value "may have probative value when offered to support an inference of possession with intent to sell, . . . the Indictment does not accuse [Defendant] of intent to sell." ECF 64, PgID 688 (citing *United States v. Green*, 548 F.2d 1261, 1270 (6th Cir. 1977)). But the fact that the street value of prescriptions may have probative value in the specific context argued by Defendant does not suggest that street value lacks probative value here. And there is no case law that limits use of evidence of narcotic street values to cases that involved the possession with intent to sell those narcotics. The Court will therefore deny Defendant's ninth motion in limine.

VIII.   Motion 10

Defendant argued that the Government should be precluded from offering evidence that any IPMA patient died of a drug overdose or similar drug toxicity event. ECF 64, PgID 689. The Government concurred and noted that it had previously agreed not to elicit evidence about any such patient. ECF 69, PgID 1026. The Court will therefore grant the motion.

IX.   Motion 11

Defendant argued that the Government should be precluded from offering into evidence transcripts of (1) undercover recordings, (2) a recorded interview, and (3) a recorded interrogation. ECF 64, PgID 690. According to Defendant, "[t]ranscripts can

13

be used as an aid by the jury in the Court's discretion, but they are not substantive evidence; the recordings are the evidence." *Id.*

Defendant is correct that transcripts can be used as an aid by the jury. *See United States v. Vinson*, 606 F.2d 149, 155 (6th Cir. 1979) (providing that transcripts can be used as an aid and that it is "preferred practice" to have the parties stipulate to their accuracy). *Vinson* held that the jury was properly allowed to use transcripts as an aid because defense counsel was given copies of the transcripts before trial, only the recordings were allowed in the jury room, and the jury was advised that the transcripts were "only an aid." *Id.* Likewise, in *United States v. Scarborough*, 43 F.3d 1021 (6th Cir. 1994), the jury's use of transcripts during trial and jury deliberations was not problematic because "the trial court instruct[ed] the jury that the tapes and not the transcripts [we]re evidence." *Id.* at 1024–25; *see also United States v. Elder*, 90 F.3d 1110, 1130 (6th Cir. 1996) (citation omitted) (providing that transcripts can be used as an aid "by the jury during the playing of tape recordings at trial and during jury deliberations after the case has been submitted"). "[T]he use of a transcript of a recorded communication during trial is within the sound discretion of the trial court." *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995) (collecting cases).

But none of the cases Defendant cited resolve the question of whether the transcripts can be offered into evidence. The Sixth Circuit has affirmed district courts' decisions to allow transcripts into evidence. *United States v. Fults*, 639 F. App'x 366, 371 (6th Cir. 2016) (holding that the admission of transcripts into evidence was proper because the court had instructed the jury that the recording controlled should

14

there be any discrepancies between the recording and the transcripts); *United States v. Gallagher*, 57 F. App'x 622, 625 (6th Cir. 2003) (holding that the district court did not abuse its discretion when it admitted transcripts into evidence because the parties stipulated to the accuracy of the transcripts). And the Court's research cannot find any Sixth Circuit case that expressly disallowed the admission of transcripts into evidence. The Court will therefore deny Defendant's motion. The Court will make a limiting instruction to the jury to explain that the recordings are the evidence, that the recordings should be deferred to in the event there is any discrepancy between the recordings and the transcripts, and that the transcripts are merely aides to assist in the understanding of the recordings. *See Elder*, 90 F.3d at 1130 (citation omitted). If Defendant believes any specific transcript contains an inaccuracy, he must notify the United States and, if the matter cannot be resolved by agreement, bring the asserted contradictions to the Court's attention before the transcripts are shown to the jury. *See United States v. West*, 948 F.2d 1042, 1043 (6th Cir. 1991) (citation omitted) (noting that the "preferred practice" for determining the accuracy of transcripts is to have the parties stipulate to their accuracy).

X.   <u>Motion 12</u>

Defendant argued that the Government should be precluded from offering evidence of the "religious artwork displayed at IPMA." ECF 64, PgID 691. The artwork includes a painting of Christ watching over Defendant with a patient in an operating room and a re-creation of Leonardo da Vinci's "The Last Supper" in which Defendant presides over twelve famous individuals who died of drug overdoses. *Id.*;

15

ECF 69, PgID 1029. Defendant argued that allowing the paintings to come into evidence would question Defendant's faith, which is impermissible under Federal Rule of Evidence 610. ECF 64, PgID 691–92.

While the Court has some preliminary concern over the necessity or relevance of introducing the evidence, the Court will deny Defendant's motion because admitting the evidence would not implicate Defendant's religious beliefs. The Government agreed that Defendant's religious beliefs are not to be questioned and stated that they were offering the evidence because Defendant used the artworks in his practice. ECF 69, PgID 1028–29. According to the Government, Defendant used the painting to show patients "all the famous . . . stars who have died" and to counsel them toward "weaning," or ending their addiction. *Id.* at 1028. The Government wishes to use the artworks and the video and photographic evidence surrounding them to "show that [Defendant] does not do what he claims to do." *Id.* at 1029. That purpose would not implicate Defendant's religious beliefs.

What is more, any prejudicial effect of admitting the evidence of the paintings would not substantially outweigh their probative value under Rule 403. The paintings have probative value for at least the health care fraud charge and the distributing controlled substances charge because they deal with how Defendant ran his medical practice and whether he used the paintings in the manner he said he did. Any prejudice to Defendant would not substantially outweigh the evidence's probative value, particularly given the fact that they would be offered for a purpose that would not implicate Defendant's religious beliefs.

16

Last, the Court will entertain a proposed limiting instruction if the Government chooses to show the jury photographs or videos that show the religious artwork. A limiting instruction can mitigate any concern that the jury might draw an improper conclusion about Defendant's religious beliefs, and the Court will accordingly deny the motion.

## **CONCLUSION and ORDER**

In sum, the Court will grant in part and deny in part Defendant's motion in limine. The Court will resolve the third and fifth matters contained in the motion in a subsequent order.

**WHEREFORE**, it is hereby **ORDERED** that Defendant's omnibus motion in limine [64] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 28, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 28, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager